Mr. Hyman, whenever you're ready. Now, we've got an appeal and a cross-appeal here, so you're going to handle your initial appeal, Mr. Archimedes? Correct. Good morning. You may have pleased the court. It is my pleasure to be here this morning on behalf of my client, One Source Technologies. This appeal, and I'm going to address some of the issues raised on the initial appeal and some of the issues on the cross-appeal as well, really asks a simple question for this court to decide, which is, do the words in contracts have meanings and should they be enforced by their plain language? And we're really faced with the application of two key provisions. Well, I mean, that's fine that you can characterize the issue as however you want to characterize it. What's the standard of review? On the attorney's fees issue, it's an abuse of discretion. On the patent assignment, it's error. That's the cross-appeal. Correct. I think it makes sense, though, to start with the patent assignment issue, even though that's the issue on the cross-appeal, because the resolution of the patent assignment can lead some insight to the court's abuse of discretion on a denial of attorney's fees, because the issue under the contract on the attorney's fees is, was One Source the prevailing party at the trial court? And it's our position that One Source prevailed on the breach of contract claim, but it prevailed in two ways. Yeah, but you had here, you had the trade secret misappropriations. You lost on that. The other side prevailed. And on the breach of contract, you prevailed, and you got a nominal fee of $10. Why was it unfair, unreasonable, an abuse of discretion for the district court to look at the case in its entirety, as it's obligated to do, and say, look, there were numerous claims here. Some won, some lost, some prevailed, some didn't, and it's a watch. Why isn't that perfectly reasonable and an abuse of discretion? The answer is because where you have a mandatory fee-shifting provision in a contract, in a private contract between parties, the court has no discretion to deny an award of fees in its entirety. Is that true under Ohio law? Because as I read the Ohio law, and that's the law that applies in this context, right? There are cases who set the standard that say that those provisions are enforceable as long as they're fair, just, reasonable, as determined by the trial court upon full consideration of all the circumstances. The trial court made a determination that it was fair, what was fair and reasonable here, given all of the circumstances of this unique case, he called out the uniqueness of this, was a watch. Why is that contrary to Ohio law? Because Ohio law provides that where a party prevails under the contract, Ohio law really mirrors federal law in the application of these prevailing party fee-shifting provisions in private contracts. And where a party prevails, the court has an obligation to exercise its discretion to figure out the reasonable fee. And when the court says we're not awarding fees at all, the court in fact has not exercised its discretion. The court has basically, the court has punted on the issue. I wanted to point out that the contract also refers to reasonable fees. Why is it that, why do you argue, what's the basis of saying that the district court finding a watch, essentially a watch, was not considering the fee issue? Why is that not a reasonable decision? Because the court has an obligation to look at the fee petition submitted, to parse out the fees attributed to the contract claim, and we have to remember, it wasn't just… Are you saying he abused his discretion by even considering all the trade secret, trade secret misappropriation issues in connection with this? Yes, yes. There were essentially two issues tried to the jury in the case. So that's your answer. But under the law, he could have also awarded fees under that because your friend prevailed on those issues. So that's what he was saying. You won on this one, but he's eligible for fees, if you want to parse who prevailed on what, he's eligible for fees of the prevailing party on those 14 trade secret misappropriation allegations, and so that's the watch. Are you saying that because he's got an attorney's fees provision in the breach of contract, he's not allowed to evaluate in the context of the other stuff that was at issue in this litigation? Yes, and the defendant's, Mr. DiFilippo's petition for fees did not rely on the contract. It did not rely on Ohio's trade secret statute. It relied on, you know, it relied primarily on 28 U.S.C. 1927 trying to declare the litigation vexatious, and so the court could easily take a look at the conduct during the litigation and say there is no basis for what happened in this litigation to award Mr. DiFilippo fees for some alleged vexatious conduct that occurred during the litigation. That's what the court, I believe that's what the court did in denying Mr. DiFilippo's cross motion for attorney's fees, but on one source's motion for fees, right, the only issue is the contract, and the fees are mandatory, and the court has... Yes, but even accepting what you just said, even if they're mandatory, and I'm not sure I agree with you, but assuming they are, he could still offset them with the other fees. He could still have awarded the other side a set of fees and say, well, I'm going to spend a year calculating what hours to spend on what allegation, and then it's a loss, and that's still okay, notwithstanding that you say that breach of contract fees are mandatory, right? No, because that's not what... He couldn't have offset them with the other fees if he had known that the other side was entitled to fees on his claim? He certainly could, but he did not make a finding that they were entitled to fees on their claims, number one, and number two, the district court judge undertook no calculation of fees at all. He basically said, I can take a look at all these issues, and it's too difficult to figure out which fees are attributed to what, and so therefore, I'm just... The court said more than that. It says, I take a look at the results here, and one party prevailed, and the other party prevailed. I have two parties that have an argument that they're the prevailing party, and on that basis, this is what I decide. No, I think what the district court decided, if you read the opinion, or that provision of the opinion in the entirety, is to say one source prevailed on some claims. Mr. DeFilippo prevailed on some claims. It's too difficult to parse out that portion of the fees attributed to one source's breach of contract claim, and so therefore, I'm going to declare it awash and say one source is responsible for its fees. Mr. DeFilippo is responsible for his fees, and I'm not going to make any determination as to which fees are attributed to the contract claim at all. How can that be an abuse of discretion? The court's looking at this and saying, I had a multi-count complaint here, and the plaintiff lost one-on-one count, basically, lost everything else. What's the court to do, like assign numbers to each one and weigh it out by those numbers, color code? I mean, what's the court to do? I mean, the court looked at that and said, this is my decision. I have to determine who the prevailing party is. It's too difficult to determine that because both prevailed and both lost. Therefore, this is my decision. How is that an abuse of discretion? Well, I think, number one, I think the law is clear that there can only be one prevailing party in a case. Two parties can't prevail. Somebody wins and somebody loses. Well, you lost on one half of the case and you won on the other half of the case. Correct. And so one reasonable way for the court to parse out the fees… So you treat it as if there are two different cases? I mean, do you say there can't be two prevailing parties? There cannot be two prevailing parties in a case. There can only be one prevailing party. One source was the prevailing party because it prevailed on his contract claim. What's your legal support for that, that there can only be one prevailing party? The legal support comes right from the United States Supreme Court. So if you have 100 claims and you win on one and you get no damages, but you win on one, you're the prevailing party. Correct. Because you won on one. Correct. But the district court doesn't have the authority, given his discretion, to say, well, you won on one. You didn't prevail on the others. I guess technically you're a prevailing party, but I'm not going to award you fees. You're not going to get fees. I'm not going to parse through all of this and find the $400 that was spent, that parsed it out, that was spent on this claim. Doesn't it have the discretion to do that? No, I don't think it does. I think the court has an obligation to exercise its discretion to figure out the fees attributed to that claim on which… Well, it did. It gave you $10. Well, the jury awarded $10, but I think one thing that we're losing, one issue that we're losing sight of here, that it wasn't just the monetary compensation on the breach of contract claim that one source sought from the trial court. The $10 nominal damages is what the jury awarded, but following the jury verdict, there was motion practice and briefing on one source's claim for declaratory judgment and injunctive relief, and the court, in fact, concluded that the jury verdict supported the assignment of the patent, the 427 patent, to one source. And so it's easy to say the jury awarded $10, and therefore it is unreasonable to award any amount of fees in largesse because we're only looking at a $10 jury verdict, but that ignores the key piece of the… That would go to the final change of motions with respect to that issue. Do you have any idea what portion of the $300,000 you're seeking goes to that? Well, I think the answer… There was… I do, and there was some $40,000 or $50,000 portion of the fees attributed to, but I think if the court is looking to craft an order… If the court is looking to craft what relief one source should get for the court's abuse of discretion, I think the answer is that because Judge Nugent made no determination as to what fee is attributed to the breach of contract claim, that the proper relief here is to conclude that the trial court abused its discretion and remand for a proper calculation of the fees. So the court… After the jury verdict, was there an objection to the $10 amount that there should be more? There was not. There was not. Okay. Why don't we hear from the other side? Thank you. Mr. Porter? Thank you. May it please the court, my name is Wayne Porter, and I represent the defendant, cross-appellant Robert DeFilippo. There are three things that really need to be addressed by the court, I believe. One is the resolution of the jury verdicts, because that is very important as to ownership of the patent. The second thing is the inequitable acts that were committed by the plaintiff in the course of prosecuting this action against Mr. DeFilippo. And the third is the thing that the court has already addressed, which is the propriety, let's say, of the fees based on a nominal damage award. Well, what did the judge do with respect to the second piece? He didn't… Excuse me? With respect to the second piece, there wasn't a lot of analysis, right? Did he reject your claim? That's correct. You're referring to the inequitable things, the things that we alleged were improper? That's correct. What's our standard of review? I believe it's an abusive discretion standard. If I may, the first point is in assurance briefing, you might note that they did not address the trade secret misappropriation verdict in Mr. DeFilippo's favor. It was referenced only tangentially on page 6 of their response brief. So what's your view? Is the other side correct or not? Oh, they're absolutely incorrect. Well, let me finish my sentence. I'm sorry. With respect to there can only be one prevailing party in a case, and is it your position that because you prevailed on more cons than he did, you should be the prevailing party here? Yes. What about the contract issue? The judge didn't explicitly address the fee obligation imposed by the breach of contract, which clearly is the one thing he did prevail on. Yes, I think that your review of the contract is de novo. I think your review of the jury instructions would be de novo. And I don't think you have any deference to Judge Nugent on an analysis of those items. Well, I don't think that helps you with regard to whether or not the other side is entitled to be a prevailing party and to get his fees with respect to the breach of contract case, right? I mean, he's entitled to fees. Oh, I disagree. He's not the prevailing party. We disagree with that. Well, he prevailed on the breach of contract. And under the contract, it says, if you have, I don't have the language in front of me, he prevailed on that copy. There's law that says that you must look at the case in the entirety. And in a situation where it's here, they requested an award of $268,000 plus $75,000 for a share of stock, and they got a $10 bill. They've not prevailed. And there's cases from this court that address the… Aren't there cases that say notwithstanding the actual amount that you prevail on the contract, that makes you a prevailing party? Excuse me, I'm sorry. Aren't there cases that say that if you prevail on the legal issue and on the issue you've raised, irrespective of what the amount of damages are, you continue to be the prevailing party? Let's say that they're a prevailing party. Let's assume that. Then we need to look at the trade secret. We need to look at the Lanham Act claim. We need to look at 12 other claims. Well, let's say he's a prevailing party on the breach of contract claim. Okay. Let's assume that. So then when you look into the contract and look at the provisions, there's a fee-shifting provision in there. Yes, that's correct. That the prevailing party shall receive attorney's fees. They got $10. They're the prevailing party. Yes. Why aren't they entitled to at least a portion of the attorney's fees that can be confined and segregated to the litigation of this breach of contract? It's a manifest injustice. It's not even supported by the cases they cite in view of what happened in this case. Well, this court didn't make a finding of manifest injustice. No, the case law that applies to this case, I believe, this is a draconian rule that you get nominal damages, and as a result, you get hundreds of thousands of dollars in attorney fee windfall for this trivial recovery. It isn't fair. Well, they got the patent. May I address that? Well, let's assume we agree with them that they should get the patent. So, I mean, I know we've got to evaluate that, but let's assume that's the outcome of this proceeding, that we think they were fairly awarded. Does that change all of the matters? I think it very well could. I mean, we believe that rule is erroneous, and it's a significant mistake. That's one reason why we're here. May I address why we believe that's the case? But if we find that the district court was correct in awarding the patent. Yes. Now, wouldn't we be then in a position where we add the patent to the $10 and say, well, it just wasn't a nominal award. It was much bigger than that. Correct. It changes the balance of the case. So we should look and maybe remand to have full consideration of the fees? The contract calls for a reasonable fee. It's reasonable in the circumstances. So the remand would be for a determination of what is reasonable. But you said that the awarding of the patent, the transfer of the patent was wrong. Yes. And therefore, this is hypothetical. Why is it wrong? Very simple. As I was saying before, they only tangentially addressed the trade secret issue. That is huge because you have a jury that found that Mr. DeFilippo did not incorporate trade secrets in his patent application. The patent application was the only act that was alleged to be wrong for what he did. They didn't say he sold the trade secrets to a foreign company. They didn't say he published them in a newspaper. The sole act was the publication of the patent. The sole alleged trade secret that was published in the patent was this so-called IMARC process. The trade secret instruction addresses the trade secrets in the IMARC process, which was the focus of the entire lawsuit. I don't understand where that gets you. I mean, you haven't challenged the jury verdict that there was a contract. No, we're not challenging the jury verdict. We're saying that... So are you saying the breach of contract finding had no relationship to the patent? Is that your position? No, I'm not. What I'm saying is that the breach of contract finding had nothing to do with the content of the patent application as far as containing stolen material from the company. It had everything to do with the timing of the filing of a patent application for an invention that competed with the company. How do we know that? We know it by implication. The fact that the trade secret verdict is in Mr. DiFilippo's favor means the jury found that he did not misappropriate trade secrets. And the only act by which the misappropriation could have occurred was the filing of the patent application. Trade secrets is a state thing, right? Yes. And the ownership of the patent, I mean, that goes to inventorship, to the conception of the patent. Correct. I mean, they're distinct. Correct. They introduce no evidence to contradict that Mr. DiFilippo was the sole inventor of the patent. In fact, there's evidence in the record that he wasn't. I don't understand. I think this is the jury finding, and the district court refers to this. I mean, they could have found disclosing confidential information without authorization. They could have found asserting ownership of a work product he generated as part of his employment, failing to disclose and assign the work product generated. He could have found all of these, even if he wasn't guilty of trade secret misappropriation, right? No. No? I disagree. The issue on breach of contract was broken down into five possible infringing acts. Right. Four of which related to disclosing confidential or trade secret material in the patent application. The fifth way to have breached the contract. Well, number three says, by asserting ownership of work product he generated as part of his employment with Acerin. You're saying that that was also what he was alleged, that was one of the trade secret misappropriation allegations against him? Yes. All four, the bottom four of the things that he could have done to have breached the contract related to incorporating confidential trade secret IMARC material in the patent application. When they found that he did not breach trade secrets, that meant, per force, that he had not incorporated that material in the patent application. What about the work product issue? Same thing. Work product was conflated by assurance to say it means one and the same thing with confidential information. It's in the race. But the point I'm trying to make is, the fifth way that they could have breached the contract was through competing. Section two of the agreement contains a non-competition clause wholly apart from invention assignment and nondisclosure of trade secrets. And when you read the definition of competition there, and it was argued by opposing counsel in closing statement, that the mere filing of the patent application could amount to competition under the agreement and would be a breach of the agreement. That's the fifth way that the jury could have found that he breached the agreement, but he did not do so by incorporating subject matter stolen from them. It was the timing. Is it your view that you, in order to prevail on this, what is the standard upon which you evaluate your argument? Do you have to show that it was the only possible basis upon which the jury could have reached its verdict? Or that it's the most plausible basis? Or that it's at least arguable? What do you view the standard here? Well, I don't know if there is a standard as you phrase it. I would just say, as a matter of logic, it's the only basis that makes sense. I mean, they've ignored that trade secret verdict, and I think that is a serious mistake. These both happened in the course of the trial. They have to be read together and reconciled to the extent that you can. And the only thing that makes sense, the only logical thing that makes sense, is the timing of the filing of the patent application, not its trade secret content, as it were. And therefore, the reassignment of the patent has no basis. That is correct. Do you see any distinction between trade secrets and work product? It can. The agreement defines it in a sort of an all-inclusive, fuzzy kind of manner. But you do see a distinction. No, not really. I think that, like a lot of companies, the things they develop while they're working on products amount to trade secrets while they're in-house being worked on. And if they're never disclosed, then they're never disclosed to the public. So they remain trade secrets. Now, this patent, though, is of dubious value, right? In what sense? Well, it's just an algorithm, isn't it? Yeah. I mean, you can argue whether or not a business patent has any value, especially since Mr. DiFilippo didn't practice it, which, if I may, leads me into another phase of the case. It surprises me that a patent infringement claim was filed for an invention, first of all, owned by Mr. DiFilippo, but in which he never practiced the invention. They knew that. Despite all the law of this court, they filed a patent infringement claim. I'm a little confused. I'm looking now at, I think, the jury instructions on trade secret misappropriation. I thought those allegations had to do with this IMARC, right? The IMARC? Yes. Okay, and I thought your position was the IMARC stuff was separate and distinct from the patent. I mean, I thought you had just told us that in order to find, because they found no trade secret misappropriation, that means that there was no unwarranted disclosure of anything to deal with the patent. I don't see that that's necessary. He did not disclose IMARC in the patent application. That's what the trade secret verdict means. And that's all it means. So I guess I'm misunderstanding whatever. I thought your entire, much of your representation to us was that the only way, given that the jury found no trade secret misappropriation, the only way, the only basis upon which to reconcile those two, it could have found breach of contract, was the non-compete. Because anything to do with work product with respect to the patent was jury found for him. Well, the jury didn't make findings with respect to trade secret misappropriations with regard to the patent, right? It was with regard to IMARC. Yeah, but the only act by which he's accused of doing anything wrong, the infringement or the misappropriation, was the filing of the patent application. That's the only thing that they accused him of. Couldn't the jury have found that the IMARC was something separate and distinct from the patent, which I think was your position? Well, disregard their arguments. Let me finish the question. I'm sorry. And therefore found that he did not commit trade secret misappropriation, but still have found that there was some use of the work product in connection with the patent? No, I don't believe that could be the case. I think it's required. That's exactly what they found, was he had not used their work product, known as IMARC, in his patent application. Why don't you save your time, because you're going to want to come back. Yes, I'm running out of time. And I would like to get back to my other arguments if I could. Well, we're going to keep you pretty much to the clock, so I think you should want to reserve your argument. Yes, I will. Thank you. So it would be helpful to me, at least, if you could respond to that and the reconciling of the trade secret misappropriation. Is your friend correct that given that the jury found for his side on the trade secret misappropriation that they absolutely could not have found that anything – any of the other criteria which they were supposed to adjudicate the breach of contract claim? No, it won't surprise you that I don't think he's correct on that point. In order for Mr. Porter to be correct on that point, he would have to ignore – he would ask this panel to ignore one key provision in the jury charge. And that provision in the jury charge, which Your Honors will find at JA 761, is an instruction that the jury could not find a breach of contract if it determined that Mr. DiFilippo solely developed the invention before beginning his employment with OneSource. So the trial court judge is looking at this jury verdict, looking at the finding of breach of contract, and trying to reconcile the trade secret claim and the breach of contract claim to come to a determination as to what to do with the assignment of the patent. And no one sits in a better position other than the district court judge who instructed the jury, drafted with counsel's aid the jury instructions, and sat through the entire trial and listened to all the evidence to construe and reconcile what that verdict means. And so the answer is, any way you parse out – and we provide a lot of detail in our briefs, much more than I can do in the limited time I have remaining this morning – in explaining that any way you look at the jury verdict under any of the various ways that breaches were described – or presented to the trial court – any way you look at the verdict leads to the same result. It leads to the fact that the patent relied on work product created by Mr. DiFilippo while he worked for OneSource, and therefore under the work product provision of the contract. And the jury could have found against you on the trade secret misappropriation, even given if that were their conclusion? Yeah, absolutely. Absolutely. They could easily find – because remember, a trade secret requires both the subject matter of the trade secret to meet the standard, and then requires the record of confidentiality. They could have easily found that one existed but not the other, or found that the claim technology did not rise to the level of a legally protected trade secret, which is a high standard to meet, but nevertheless found that the subject matter of the patent that was filed was comprised of information Mr. DiFilippo was given, learned, worked on, did, created, what have you, while he was an employee of OneSource under this non-competition and confidentiality agreement. Completely reconcilable, and that's what the court reconciled here. And again, directing the panel to that key provision on JA761, that there could not be a breach if the jury determined that Mr. DiFilippo developed the invention before joining OneSource. So what the jury found when you look at the jury instructions as a whole, but specifically focusing on that provision, that clause in the jury instructions is there was something in that patent application, the patent that was issued, that Mr. DiFilippo developed while he was an employee of OneSource. And once the trial court reached the conclusion that there was something in that patent application that Mr. DiFilippo developed, even if it didn't rise to the level of a protected trade secret on behalf of the company, the… Mr. DiFilippo stole this invention, the core computer process of the company. Do you think the jury is going to find that he didn't steal trade secrets and award only $10 to the company? That makes no sense. It's illogical. What does make sense is you have jury instructions that would address the possible misappropriation of trade secrets while he's employed, but which also says you can compete by doing things like working part-time for somebody else, like filing a patent application for a competing product, regardless of its derivation. They argued that point. They argued it to the jury. Okay. We have the argument. We thank both counsel. The case is submitted.